## THE PRESIDENT ARTHUR.

District Court, S. D. New York. September 13, 1927.

**1. Payment ⊗⇒67(3)—Presumption is that note of third, person, taken at time of debt, is taken in payment.**

When a note of a third party is taken at time of creation of debt, as on a sale of goods, presumption is it was taken in payment.

**2. Maritime liens ⊗⇒8—Agreement requiring payment for coal furnished ship on delivery, by delivering trade acceptances, precluded maritime lien.**

Where agreement for sale of coal to be used as bunker fuel on ship expressly required payment coincidentally with delivery, by delivery of trade acceptances bearing certain indorsements, such agreement was conclusive, and precluded maritime lien, since coal was to be paid for on delivery.

In Admiralty. Libel by W. A. Marshall & Co., Inc., against the steamship President Arthur, her engines, boilers, etc. Libel dismissed.

In admiralty. Libel in rem to recover agreed price of bunker coal furnished to the steamship President Arthur. In March, 1925, the American Palestine Line, as owner of the steamship President Arthur, entered into two written agreements with the libelant for the sale of approximately 3,225 gross tons of coal, as each agreement recites, "to be used as bunker fuel for the said steamship President Arthur." Each agreement contains the following provisions with reference to the payment of the purchase price:

"The buyer shall pay for the said coal as follows:

"(1) By delivering to the seller a trade acceptance drawn by it in favor of the seller, dated the date of the delivery of the coal, due March 10, 1925, covering railroad freight of $2.79 a gross ton, which acceptance is to be indorsed by Jacob Wacht, Jacob S. Strahl, and Joseph W. Gottlieb.

"(2) A trade acceptance drawn by the buyer in favor of the seller, dated on the same day, due May 8, 1925, covering the balance of the purchase price, to wit: $2.31 a gross ton, representing the coal, harbor barge freight, and insurance on coal while in barges, which acceptance is also to be indorsed by the said Jacob Wacht, Jacob S. Strahl, and Joseph W. Gottlieb.

"The entire contract between the parties is stated above, and there is no outside condition, warranty, agreement, or understanding. Certificate of weights according to railroad bill of lading.

"Witness the signatures of the respective parties hereto."

On each of the said agreements, below the signatures of the parties and above the signatures of the persons named as indorsers of the acceptances to be given by the purchaser, there appears the following:

"In consideration of the execution of the foregoing contract, and of the delivery of said coal by the seller to the buyer, and in consideration of one dollar ($1.00) paid to each of the undersigned, the receipt of which is hereby acknowledged, we jointly and severally agree to indorse the said trade acceptance described in the foregoing contract between the seller and the buyer."

The libelant delivered 4,151 tons and 12 hundredweight to the vessel. The purchase price, at $5.10 per ton, amounted to $21,736.16. Trade acceptances in this amount were given and received under the agreements. These have not been paid, except to the extent of $11,790.50. For the balance of $9,382.62, with interest from March 6, 1925, the libelant claims a maritime lien against the vessel.

George Wright Hinckley, of New York City (J. Markham Marshall, of New York City, of counsel), for libelant.

Lampke & Stein, of New York City (Chauncey E. Treadwell, of New York City, of counsel), for claimant American Palestine Line, Inc.

THACHER, District Judge (after stating the facts as above). [1] The rule is settled that, when a note of a third party is taken at the time of the creation of a debt, as upon a sale of goods, the presumption is that it was taken in payment. Atlas S. S. Co. v. Colombian Land Co., 102 F. 358 (C. C. A. 2d); N. Y. & Cuba S. S. Co. v. Texas Co., 282 F. 221 (C. C. A. 2d); Hall v. Stevens, 116 N. Y. 201, 22 N. E. 374, 5 L. R. A. 802. [2] There is no need for such presumption in this case, because the agreement expressly required payment coincidentally with the delivery of the coal by delivery of trade acceptances bearing three indorsements. The agreement which the parties made is conclusive, and if there were evidence of intention contrary to its terms this could not be considered. But there was no such evidence. In the face of the agreements, no maritime lien could arise, because the coal was to be paid for on delivery. Even if a lien had arisen, it certainly could not survive payment in the form the parties expressly contracted for, namely, the delivery of the acceptances. It is entirely clear, I think, that the libelant did not rely on the credit of the ship.

The libelant having no lien, its suit fails, and the complaint will be dismissed, with costs.