### THE PRESIDENT ARTHUR.

Circuit Court of Appeals, Second Circuit.
April 9, 1928.

No. 233.

**1. Maritime liens ⬸24—Act relating to maritime liens does not bar proof that what was furnished was on credit of owner, and not on credit of ship (Merchant Marine Act 1920).**

Merchant Marine Act 1920 (41 Stat. 988), relating to maritime liens, and section 30, subsec. P. (46 USCA § 971; Comp. St. § 8146¼ooo), providing that "it shall not be necessary to allege or prove that credit was given to the vessel," does not bar proof that whatever was furnished was furnished on mere credit of owner or third party, and not upon credit of ship.

**2. Maritime liens ⬸24—Lien does not exist where supplies are furnished on credit of shipowner (Merchant Marine Act 1920).**

A lien does not exist, under Merchant Marine Act 1920 (41 Stat. 988), where supplies are furnished on mere credit of ship.

**3. Maritime liens ⬸26—Maritime lien must not be given broad legal interpretation, and cannot be extended by construction, analogy, or inference (Merchant Marine Act 1920).**

Maritime lien, under Merchant Marine Act 1920 (41 Stat. 988), is not to be given broad legal interpretation, nor is it to be extended by construction, analogy, or inference.

**4. Maritime liens ⬸43—Agreement requiring payment on delivery for coal furnished, by giving trade acceptance, precluded maritime lien where trade acceptance was given (Merchant Marine Act 1920).**

Where agreement, under which libelant supplied bunker coal, provided that payment should be made on delivery by giving trade acceptances indorsed by three individuals, and trade acceptances were given as provided, no maritime lien existed against vessel, under Merchant Marine Act 1920 (41 Stat. 988), since no lien can exist in favor of materialman when he receives in payment that for which he stipulated when contract was made.

L. Hand, Circuit Judge, dissenting.

Appeal from the District Court of the United States for the Southern District of New York.

Libel by W. A. Marshall & Co., Inc., to enforce a maritime lien against the steamship President Arthur, her engines, boilers, etc., for coal supplied. From a decree for claimant (22 F.[2d] 584), libelant appeals. Affirmed.

George Wright Hinckley, of New York City, for appellant.

Lampke & Stein, of New York City (Chauncey E. Treadwell, of New York City, of counsel), for appellee.

Saul S. Myers, John M. Woolsey, and Joseph K. Guerin, all of New York City, amici curiæ.

Before MANTON, L. HAND, and AUGUSTUS N. HAND, Circuit Judges.

MANTON, Circuit Judge. In March, 1925, appellant supplied bunker coal to the President Arthur and seeks to enforce a lien for a balance unpaid. It is not denied that the coal was supplied, but it is contended by the appellee that the coal was supplied pursuant to written contract providing for payment on delivery by giving a trade acceptance indorsed by three individuals, and it is asserted that by reason thereof no maritime lien exists against the vessel. The contract provided:

"The buyer will pay for the said coal as follows:

"(1) By delivering to the seller a trade acceptance drawn by it in favor of the seller, dated the date of the delivery of the coal, due March 10, 1925, covering railroad freight of $2.79 a gross ton, which acceptance is to be indorsed by Jacob Wacht, Jacob S. Strahl, and Joseph W. Gottlieb.

"(2) A trade acceptance drawn by the buyer in favor of the seller, dated on the same day, due May 8, 1925, covering the balance of the purchase price, to wit, $2.31 a gross ton, representing the coal, harbor barge freight and insurance on coal while in barges, which acceptance is also to be indorsed by the said Jacob Wacht, Jacob S. Strahl, and Joseph W. Gottlieb.

"The entire contract between the parties is stated above, and there is no outside condition, warranty, agreement, or understanding."

After the signature on the contract, it is provided:

"In consideration of the execution of the foregoing contract, and of the delivery of said coal by the seller to the buyer, and in consideration of one dollar ($1.00) paid to each of the undersigned, the receipt of which is hereby acknowledged, we jointly and severally agree to indorse the said trade accept-

ances described in the foregoing contract between the seller and the buyer."

On February 15, 1925, the appellant's sales manager testified that they looked into the financial standing of the owners of the vessel and came to the conclusion that they did not like the account and wanted to get trade acceptances in order "to get the money at any time they wanted—in fact to discount that paper." And he said, "We were not satisfied with the credit of the American-Palestine Line." He wrote appellee on February 16th that they wanted trade acceptances to be indorsed by three responsible persons acceptable to them. He testified further that they did not consider the Palestine Line financially responsible, and insisted upon the indorsement so that they could discount the paper "in case we need it at any time." It is significant that the agreement provides that the indorsements were made by these individuals as part of the consideration of the sale of the coal, and it was sworn in an affidavit that, without the consideration of such indorsements, the appellant would never have sold the coal to the American-Palestine Line. There was "no outside condition, warranty, agreement or understanding." Thus it appears that the credit of the ship was not accepted by the appellant, but, by the contract of the parties, trade acceptances with three indorsers were insisted upon, and everything for which the appellant had contracted was given in payment. Cash was not contracted for, but payment other than cash was accepted. It was, as said by Chief Justice Taney in Phelps v. The Camilla, Taney 400, Fed. Cas. No. 11073 (Md. 1838):

"If the party does not choose to rely on the contract which the maritime law implies in such cases, but takes an express written contract, he must rely on the contract he makes for himself, and cannot, upon a change of circumstances, resort to the securities upon which, in the absence of any special agreement, the law presumes that he relied; and if he takes a note or bill of exchange, or any other personal engagement, for the payment of the debt, he is presumed to rely on this personal security, and to waive his lien, unless he stipulates that the liability of the vessel shall still continue."

This rule has not been departed from by authoritative decisions. See Segrist v. Crabtree, 131 U. S. 287, 9 S. Ct. 687, 33 L. Ed. 125; McMurray v. Brown, 91 U. S. 257, 23 L. Ed. 321; N. Y. & Cuba S. S. Co. v. Texas Co. (C. C. A.) 282 F. 221; Atlas S. S. Co. v. Colombian Land Co. (2 C. C. A.) 102 F. 358.

The Merchant Marine Act of 1920 (46 USCA § 974; Comp. St. § 8146¼ppp) provides that:

"Nothing in this section shall be construed to prevent the furnisher of repairs, supplies, towage, use of dry dock or marine railway, or other necessaries, or the mortgagee, from waiving his right to a lien, or in the case of a preferred mortgage lien, to the preferred status of such lien, at any time, by agreement or otherwise."

[1-4] To support a lien, the act (46 USCA § 971; Comp. St. § 8146¼ooo) provides "it shall not be necessary to allege or prove that credit was given to the vessel." Nothing in the act bars proof that whatever was furnished was furnished on the mere credit of the owner or third party and in no sense upon the credit of the ship. Ely v. Murray (C. C. A.) 200 F. 368. A lien does not exist where the supplies are furnished on the mere credit of the owner. The Cora P. White (D. C.) 243 F. 246. There is a marked distinction between the effect of taking a note for an obligation which already existed, and agreeing in a contract which referred to an obligation hereafter to arise, that the payment of that obligation must be made by promissory note. The trade acceptance, assuming a default in payment, permitted the appellant to sue the indorsers. This it did.

The maritime lien is not to be given a broad legal interpretation, nor is it to be extended by construction, analogy, or inference. Osaka Shosen Kaisha v. Pacific Export Lumber Co., 260 U. S. 490, 43 S. Ct. 172, 67 L. Ed. 364; Piedmont Coal Co. v. Seaboard Fisheries Co., 254 U. S. 1, 12, 41 S. Ct. 1, 65 L. Ed. 97. Where parties agree to an express contract as to payment, the contract becomes extinguished by full performance and so it is impossible that either party should have any claim against the other arising out of the contract. No lien can exist in favor of the materialman when he receives in payment that for which he stipulated when the contract was made.

In The Bird of Paradise, 5 Wall. 545, 18 L. Ed. 662, referred to by appellant, a lien was asserted for freight. That lien differs from a maritime lien for repairs because a ship is bound to the cargo until delivery or tender of delivery and equally is the cargo bound to the ship for the payment of freight. The freight contract provided that it should be paid in Liverpool on unloading and right delivery of the cargo. Construing the clauses of the bill of lading together, it was clear that the charterer was not obliged to pay the freight until tender of delivery. While

the charterer did give the first acceptance, he failed in business, and the acceptance was dishonored before the arrival of the ship, and he never gave or tendered the second acceptance mentioned in the charter party. It was held that the lien remained. The court stated that the freight lien "stands upon the same ground with the lien of the carrier on land, and arises from the right of the shipowner to retain the possession of the goods until the freight is paid, and is lost by an unconditional delivery to the consignee." And that the freight lien "may be modified, or it may be excluded, or displaced by direct words, or by the insertion of some stipulation wholly incompatible or irreconcilable with the existence of such a right." Requiring the appellee to procure indorsements of three separate individuals was such a stipulation as is referred to in the language quoted, and the appellant relied solely upon the indorsements and not on the maritime lien, 'for it refused to sell until it had the agreed indorsements.

Decree affirmed.

L. HAND, Circuit Judge (dissenting). There are two questions at issue—first, whether the acceptances were a payment; if not, whether their receipt by the libelant was a "waiver" (of) "his right to a lien * * * by agreement or otherwise." If the claimant had not been a party to the acceptances, it may be assumed that they would have been a payment. Atlas S. S. Co. v. Colombian Land Co., 102 F. 358 (C. C. A. 2); N. Y. & Cuba S. S. Co. v. Texas Co., 282 F. 221 (C. C. A. 2); Hall v. Stevens, 116 N. Y. 201, 22 N. E. 374, 5 L. R. A. 802. If, on the other hand, it had agreed only to deliver its note, and had done so, the note would not have been a payment. The doctrine that a note, in the absence of an agreement to that effect, is not payment, is not limited to cases where it is given upon a pre-existing debt, but equally applies when the only promise is to deliver it, The Bird of Paradise, 5 Wall. 545, 18 L. Ed. 662; Reed v. Van Ostrand, 1 Wend. (N. Y.) 424, 19 Am. Dec. 529; Combs v. Bateman, 10 Barb. (N. Y.) 573. Logically, it is true, the promise is performed when the note is delivered, but the law looks to the essence, which is the payment of the money, of which the note is only another promise. When the buyer is to deliver the note of another person he has never agreed to pay at all, but if he joins in the paper, the presence of other obligors does not affect his primary obligation. As he still remains liable, he has never paid.

The question of "waiver" is more difficult. Under the maritime law, the cases were in great conflict as to what security taken at the time forbade the inference that the buyer meant to rely on the ship. The strongest case for the claimant is a bottomry bond, and this was held to "waive" the lien. The Ann C. Pratt, Fed. Cas. No. 409, affirmed sub nom. Carrington v. The Ann C. Pratt, 18 How. 63, 15 L. Ed. 267. It would seem that a mortgage was equally strong evidence of the same intent, but the decisions are at variance. In The A. R. Dunlap, Fed. Cas. No. 513, The D. B. Steelman (D. C.) 48 F. 580, The Thomas Morgan (D. C.) 123 F. 781, The Cimbria (D. C.) 214 F. 128, and The Fairhope (D. C.) 235 F. 1007, the lien survived such a mortgage, but not in The Lucille (D. C.) 208 F. 434, and The Yankton (D. C.) 7 F.(2d) 384.

Other kinds of security have also an equivocal effect. The Circuit Court of Appeals for the Fifth Circuit held that a wharfinger's lien was not waived by taking a surety bond in advance (El Amigo, 285 F. 868), and that a maritime lien was not waived by retaining title to the machinery installed (Ricou v. Fairbanks Morse & Co. [C. C. A.] 11 F.[2d] 103). The Pearl (D. C.) 189 F. 540 and The E-270 (D. C.) 16 F.(2d) 1005, are in accord with the last case. The acceptance of an unindorsed note of the owner is not a "waiver." The Kimball, 3 Wall. 37, 18 L. Ed. 50; The Bird of Paradise, 5 Wall. 545, 18 L. Ed. 662, supra. Judge Brown held the same of the note of a third person in The James T. Easton (D. C.) 49 F. 656, and Judge Betts in The Active, Fed. Cas. No. 34. In Moore v. Newbury, Fed. Cas. No. 9772, and The Theodore Perry, Fed. Cas. No. 13879, the same was held as to indorsed paper, taken, however, after the goods had been sold. Justice Miller on the other hand held flatly the contrary at Circuit (Taylor v. Commonwealth, Fed. Cas. No. 13787), even though the note was in fact never delivered. On the facts it is hard to see how this conclusion could have been reached. In Phelps v. The Camilla, Fed. Cas. No. 11073, Chief Justice Taney at Circuit decided that when the sellers took notes of the ship's agent, they showed that they meant to rely upon them and not upon the ship, and he added obiter that the taking of a note would have released a lien anyway.

Mechanics' liens are not released by a reservation of title (Chic. & Alton R. R. Co. v. Union Rolling Mill Co., 109 U. S. 702, 3 S. Ct. 594, 27 L. Ed. 1081; Leschen, etc., Co. v. Mayflower, etc., Co., 173 F. 855, 35

L. R. A. [N. S.] 1 [C. C. A. 8]; Hooven, etc., Co. v. Featherstone, 111 F. 81, 95 [C. C. A. 8]), nor by taking other security (Smith v. Butts, 72 Miss. 269, 16 So. 242; Hinchman v. Lybrand, 14 Serg. & R. [Pa.] 32; Phelps Lumber Co. v. McDonough Mfg. Co., 202 F. 445 [C. C. A. 9]). Perhaps this is because such liens are favored, unlike maritime liens or those of vendors. Cordova v. Hood, 17 Wall. 1, 21 L. Ed. 587; Williams v. Roberts, 5 Ohio, 35; Griffin v. Blanchar, 17 Cal. 70.

It must be confessed, therefore, that the decisions are confused and that on authority the case might go either way. Before 1910 the question was whether the seller had shown that he had taken the credit of the ship and not that of the owner, though prima facie he succeeded if the ship were in a foreign port. The statute has, however, changed the burden (Piedmont Coal Co. v. Seaboard Fisheries Co., 254 U. S. 1, 12, 41 S. Ct. 1, 65 L. Ed. 97), because it establishes the lien whenever the goods are ordered by any of the specified persons. Why should the seller not want some added security, or be understood to take the note in substitution for the lien?

The claimant must show just that; he must affirmatively prove, there being no agreement and no estoppel, that the parties could not have intended both securities to stand together. I can find no warrant for so strong a conclusion. Maybe, if the libelant still had the burden, this evidence would not show positively enough that he had given credit to the ship. But he has not got to do that any longer; the boot is on the other leg, and the claimant must show that the lien was released, for that, in substance, appears to me to be the equivalent of "waived" under these circumstances. The proof falls far short of that. Courts may still look jealously at maritime liens, but the statute has accomplished something and that in their favor. If it has not even gone so far as meets the libelant's needs here, I should think it had done nothing at all. I think that the decree should be reversed.