### THE PRESIDENT ARTHUR.

### GUERIN v. MORSE DRY DOCK & REPAIR CO.

District Court, S. D. New York. April 2, 1930.

Hayes & Palmer, of New York City, for Morse Dry Dock & Repair Co.

Burlingham, Veeder Fearey, Clark & Hupper, of New York City, for American Palestine Line, and the President Arthur.

Saul S. Myers, of New York City (Cletus Keating, of New York City, of counsel), for trustee.

THACHER, District Judge.

The commissioner has concluded that the libelant has a maritime lien for payments which the parties agreed, before the repairs were commenced, should be made by the delivery and acceptance of a note indorsed by a third party. The agreements were in writing and provided that the repairs should be paid for partly in cash and partly in indorsed notes negotiable in form. Decision is controlled by Marshall & Co. v. The President Arthur, 279 U. S. 564, 49 S. Ct. 420, 73 L. Ed. 846. For the same case in this court and in the Circuit Court of Appeals, see 22 F.(2d) 584, and 25 F.(2d) 648. Taylor v. The Commonwealth, 23 Fed. Cas. 756, No. 13787, cited with approval in the opinion in the Marshall Case, rules the precise point.

Two circumstances are much relied on by libelant: During the negotiations, a provision to the effect that the vessel should not be mortgaged before a date when it was expected the repairs would be completed, a period subsequently extended when completion was delayed, was inserted in the agreements for the repairman's protection. This is said to show an intention to preserve a lien which would survive the acceptance of the note, but, if of any significance, the provision indicates intention to keep the vessel free of liens only until payment had been made as agreed, part-ly in cash and partly in notes. So far as one may gather intent from the instrument, the repairman was to have no further concern with the ship once he got his cash and notes in payment. If the intent had been otherwise, the covenant against incumbrances would have been made to run until after payment of the notes. It is the intent expressed in the instrument which controls, and the commissioner was not justified in going outside the memorials of the parties to find a contrary intent. The other circumstance relied upon is that the note was accepted without prejudice to libelant's lien, *if any;* but, since there was none, this reservation could neither create nor preserve one.

There is some question whether the entire sum represented by the note was owing under the contracts. The commissioner found that none of it was. In this he was clearly in error, and seems to have overlooked the provisions of the first contract specifying certain items and describing generally additional work to be performed under the contract, as well as the provisions of the second contract for payments partly in cash and partly in notes. But one need not follow claimant's counsel in the careful analysis of proof to ascertain that the note represented amounts due under these contracts. The parties by their own allocation of payments in cash and in a note settled that question after serious controversy, and the accord they reached should not be disturbed. It must therefore be concluded that the note which was delivered and accepted represented payments required to be made in this form under the provisions of the two agreements, and that the cash received represented amounts required to be paid in cash under the contracts or for additional repairs not included in their terms.

When these matters were adjusted between the parties, they left open for further consideration bills which had not been checked, aggregating, as subsequently adjusted, $7,759.99. These charges arose under the second contract, and to the extent of one-half thereof ($3,880) were payable in cash. For this amount the libelants were, and are, entitled to a lien against the vessel.

Certain counterclaims are asserted by cross-libel. As to these it need only be said that in the aggregate they amount to only $35,000, and would be more than offset by the note for $125,000, which is still unpaid. Being thus offset by the note, they should not, even if established by the proofs, be allowed to offset the lien on the vessel; and, since the court is without jurisdiction to allow a re-

covery on the note, the cross-libel will be dismissed without prejudice to the assertion of these counterclaims in any action at law which may be brought against the American Palestine Line, Inc., to enforce its liability on the note.

It follows that the libelant may enter a decree against the vessel, or her proceeds, for $3,880, with interest. The cross-libel may be dismissed without prejudice as indicated. In each suit costs will be disallowed.