SOUTH CAROLINA STATE PORTS
AUTHORITY, Plaintiff–
Appellant,

v.

M/V TYSON LYKES, ex Delaware Bay,
her engines, tackles, apparel, furniture,
etc., in rem, Defendant–Appellee.

SOUTH CAROLINA STATE PORTS
AUTHORITY, Plaintiff–
Appellee,

v.

M/V TYSON LYKES, ex Delaware Bay,
her engines, tackles, apparel, furniture,
etc., in rem, Defendant–Appellant.

SOUTH CAROLINA STATE PORTS
AUTHORITY, Plaintiff–
Appellant,

v.

M/V TILLIE LYKES, ex Chesapeake Bay,
her engines, tackles, apparel, furniture,
etc., in rem, Defendant–Appellee.

SOUTH CAROLINA STATE PORTS
AUTHORITY, Plaintiff–
Appellee,

v.

M/V TILLIE LYKES, ex Chesapeake Bay,
her engines, tackles, apparel, furniture,
etc., in rem, Defendant–Appellant.

Nos. 93–2460, 93–2465 to 93–2467.

United States Court of Appeals,
Fourth Circuit.

Argued July 12, 1994.

Decided Oct. 16, 1995.

ARGUED: Philip Lucius Lawrence, Vaughan & Lawrence, P.A., Charleston, South Carolina, for Appellant. Gordon D. Schreck, Buist, Moore, Smythe & Mcgee, P.A., Charleston, South Carolina, for Appellees. ON BRIEF: Douglas M. Muller, Buist, Moore, Smythe & McGee, P.A., Charleston, South Carolina, for Appellees.

Before RUSSELL, WIDENER, and HALL, Circuit Judges.

Affirmed by published opinion. Judge WIDENER wrote the opinion, in which Judge RUSSELL and Judge HALL joined.

## OPINION

WIDENER, Circuit Judge:

Appellant, the South Carolina State Ports Authority, appeals from a finding of the district court that certain charges incurred at the Port of Charleston in the servicing of two vessels, the Tyson Lykes and the Tillie Lykes,[1] owned by appellee and cross-appellant First American Bulk Carrier Corp. and chartered by Topgallant Lines, a presently bankrupt charterer (Topgallant), are not secured by liens on the vessels because the charges were incurred by an independent contractor (Allsouth) and not an agent of Topgallant, as required under the Federal Maritime Lien Act, 46 U.S.C. §§ 31341 and 31342. Appellee First American cross-appeals from a finding of the district court that the Ports Authority did not waive its statutory liens on the vessels by making a guarantee arrangement with Topgallant's Charleston agent, Southeastern Maritime Company, before agreeing to provide terminal services to the vessels. We affirm.

First American chartered the ships to Topgallant, which made Southeastern its authorized agent in Charleston. In 1987, Topgallant and the Ports Authority negotiated for a variance in the terms of the Ports Authority tariff, which governs the cost of services provided by the Port Authority in Charleston, but the negotiations were never consummated. Upon the Port Authority's request, Southeastern guaranteed the Authority's charges incurred while Topgallant's ships were in port at Charleston. Topgallant contracted with Allsouth, a stevedoring company, to load and discharge containers of the ships in Charleston. Allsouth was compensated on a "pick-rate" basis, which is a flat rate per container basis out of which Allsouth paid the Authority for all its services to Allsouth. The Ports Authority was the only entity at the Port of Charleston that possessed the cranes and container-handling equipment necessary to perform certain of the stevedoring services.

Topgallant declared bankruptcy in December 1989. The ships were arrested in Germany to satisfy creditors of Topgallant, but the Ports Authority did not participate in those proceedings, instead notifying Southeastern that it was calling Southeastern's guarantee. A plan was worked out whereby Southeastern would repay Topgallant's debts to the Authority, and a similar plan was agreed to by the Authority and Allsouth for amounts owed by Allsouth to the Authority. At some point in May or June 1990, Southeastern ceased payments to the Ports Authority, as did Allsouth. When the ships, renamed and rechartered, returned to Charleston in 1990, the Ports Authority asserted its liens against them, and First American offered a letter of undertaking in October 1990 to avoid the arrest of the ships in Charleston.

The Ports Authority brought suit against the ships in rem and First American as claimant of the ships, seeking recovery of various terminal service charges in a total amount of $241,550.33. The district court dismissed certain claims for lack of jurisdiction. It then found that all the remaining claims were secured by liens under the Maritime Lien Act as "necessaries to a vessel," 46 U.S.C. § 31342(a), but that those incurred by Allsouth[2] were not secured by liens on the

---

1. At times relevant to these proceedings, the ships were chartered under the names Delaware Bay and Chesapeake Bay. There is no dispute as to the identity of the ships.

2. Container crane, and handling equipment rental charges and stevedore usage charges.

vessels. As to the remainder of the claims,[3] the district court granted liens to the Ports Authority in the amount of $118,781.76, finding no merit to First American's prohibition-of-lien, laches, or waiver defenses. Only the question of waiver is raised on appeal.

■ We review the fact findings of the district court on the first issue, Allsouth's authority to bind the vessels, for clear error, *McAllister v. United States*, 348 U.S. 19, 20, 75 S.Ct. 6, 7–8, 99 L.Ed. 20 (1954); *Norfolk Shipbuilding & Drydock Corp. v. The M/V La Belle Simone*, 537 F.2d 1201, 1203 (4th Cir.1976), and find none. The Maritime Lien Act, in relevant part, states that "a person providing necessaries to a vessel on the order of the owner or a person authorized by the owner ... has a maritime lien on the vessel...." 46 U.S.C. § 31342(a)(1). The district court found, and it is not disputed on appeal, that the services provided by the Ports Authority to Allsouth, the rental of container cranes and container-handling equipment, were "necessaries," and that Topgallant, as charterer, was "a person authorized by" First American, the owner of the ships. Thus the question is whether the use of the Authority's equipment was provided "on the order of" Topgallant, or in the alternative, whether Allsouth was "a person authorized" by First American to order the Authority's provision of stevedoring equipment. In effect, the issue is whether Allsouth was Topgallant's agent for purposes of procuring the use of the Authority's stevedoring equipment. If not, then the Authority has no lien against the vessels.

On the evidence in this case, we agree with the district court that the Authority failed to satisfy its burden of proving that Allsouth was Topgallant's agent. See *Hofherr v. Dart Indus., Inc.*, 853 F.2d 259, 262 (4th Cir.1988). Although there was a dispute regarding the amount of control Topgallant retained over Allsouth's operations, there is no question but that sufficient evidence was presented for the district court to conclude that Allsouth acted independently in contracting with the Ports Authority for crane rental, container-handling services, and stevedore usage fees.[4] In this connection, we note that the Authority billed Allsouth for its services, not Topgallant; Topgallant agreed with Allsouth for stevedoring, not the Authority; Allsouth even now prosecutes its lien for the same services for which the Authority claims its liens here; and Topgallant paid Allsouth on a "pick-rate," basis, that is, by the container, from which Allsouth paid the Authority for all the services in question here. We are also persuaded by the observation that it has not been shown that a court has found an agency relationship between an operator and a stevedore in the absence of contractual provisions or clear evidence of control and supervision by the operator. Accordingly, the district court was not clearly erroneous in finding that Allsouth had no authority to bind the vessels to the Authority's rental charges and fees, and thus the Authority has no maritime lien for those charges.

■ We now address First American's cross-appeal. The parties dispute the appropriate standard of review of the district court's conclusions. Although the issue of intent to waive a lien is one of fact reviewed for clear error, see *Farrell Ocean Servs., Inc. v. United States*, 681 F.2d 91, 94 (1st Cir. 1982), First American argues that the district court failed to consider that certain conduct constitutes a waiver of maritime liens, see *W.A. Marshall & Co., Inc. v. S.S. "President Arthur"*, 279 U.S. 564, 572, 49 S.Ct. 420, 423, 73 L.Ed. 846 (1929). We are of opinion that the issue presented is of the application of law to facts. We review the district court's conclusions of law *de novo*, see, e.g., *Rawl v. United States*, 778 F.2d 1009, 1014 and n.9 (4th Cir.1985), *cert. denied*, 479 U.S. 814, 107

---

3. Dockage, wharfage and harbor master fees and labor.

4. The Ports Authority relies heavily on the theory that Topgallant dealt directly with the Authority and that Allsouth was merely an intermediary. Given the undisputed fact that the Topgallant–Ports Authority negotiations were never consummated, we do not understand how the Authority so conceptualizes the situation. Once Topgallant rejected the Authority's offer to vary the tariff, any dealings between Allsouth and the Authority were clearly not controlled by those negotiations, and Allsouth and the Authority were free to reach their own agreements. We thus uphold the district court's determination that this intermediary theory is unsupported in the record.

S.Ct. 67, 93 L.Ed.2d 25 (1986), but the underlying facts under the clearly erroneous standard. *Farrell,* 681 F.2d at 93.

■ In the *"President Arthur",* the owner of the vessel wished to purchase coal for the ship which could not be obtained on usual terms because the owner was not financially responsible. The coal dealer demanded endorsed trade assurances instead of open account credit and that the trade assurances be endorsed by financially responsible people. The trade assurances could then have been converted into cash by discounting prior to their maturity. The contracts for purchase of the coal were reduced to writing and provided that the owner should "pay for the said coal as follows: by delivering to the company two trade acceptances." The contracts also provided that they were "the entire contract between the parties" and that "there is no outside condition, warranty, agreement or understanding." 279 U.S. at 565–566, 49 S.Ct. at 420. On these facts, the district court found that "no maritime lien could arise, because the coal was to be paid for on delivery." *The President Arthur,* 22 F.2d 584 (1927). On appeal, the Second Circuit affirmed stating that "the payment of that obligation [the price of the coal] must be made by promissory note." *The President Arthur,* 25 F.2d 648, 649 (2nd Cir.1928). On further review, the principal reasoning of the Supreme Court was that the owner did not choose to rely on the contract which the maritime law implies in such cases, but took an express written contract upon which he must rely. *"President Arthur",* 279 U.S. at 569, 49 S.Ct. at 421–22. The *"President Arthur",* however, was followed by *Dampskibsselskabet Dannebrog v. Signal Oil & Gas Co.,* 310 U.S. 268, 60 S.Ct. 937, 84 L.Ed. 1197 (1940). In that case, Signal Oil contracted with a shipping company to sell fuel oil to any vessel which the shipping company might own, charter or operate, which contract was later modified to include like vessels of W.L. Comyn & Sons. Signal sold fuel oil to two ships on orders of the charterer, Comyn, and sought a maritime lien on the vessels for payment of the same. The defense was that the oil was furnished on the charterer's credit and not upon that of the vessel. The charter contained no prohibitions against the creation of liens for necessary supplies ordered by the charterers. On those facts, the Court affirmed the court of appeals that a lien existed and stated that "the materialman is entitled to be furnished the supplies upon the credit of the vessel as well as upon that of the charterer *and the lien is not defeated by the fact that the charterer has promised the owner to pay."* 310 U.S. at 275, 60 S.Ct. at 941 (italics added). The Supreme Court has not taken up the subject since the *Oil Co.* case, and in the *Oil Co.* case the Court rejected reliance on the *"President Arthur",* and noted that the lien had been waived in the *"President Arthur".* It also mentioned that that part of the decision of the court of appeals in the case there at hand which had relied on the fact that the maritime lien had been expressly reserved was not before it for decision. 310 U.S. at 277, 60 S.Ct. at 941–42.

In this circuit in *Jeffrey v. Henderson Bros.,* 193 F.2d 589 (4th Cir.1951), the owner of a tipple boat on the Monongahela River ordered supplies which were in fact intended for and used on Tipple Boat No. 2, but were delivered to the owner and not to the vessel itself, although used thereupon. The defense was that the supplies were sold on the credit of the owner and thus any maritime lien was waived. The Court rejected that defense and rejected the application of *"President Arthur".* 193 F.2d at 593. The court stated that it was "immaterial in considering the right to a lien for necessaries under the statute, 46 U.S.C.A. § 971, that the supplies were ordered by the owner and *that the sellers relied upon the credit of both the owner and the ship."* 193 F.2d at 593 (italics added). We think the facts in the *Jeffrey* case are indistinguishable for all practical purposes from those at hand, and those in the *Oil Co.* case are quite similar. The district court here found that a fact, which is not clearly erroneous, that "[a]t best, the evidence shows additional security was taken by the [Authority] without in any way relinquishing its right to lien the vessels."

We are thus of opinion that by taking the guarantee of Southeastern the Authority did not waive its lien for such necessaries as the

district court found were ordered by persons authorized.

In summary, we affirm the judgment of the district court so far as it establishes liens in favor of the Ports Authority in the amount of $118,781.76, and we also affirm the judgment of the district court insofar as it declined to establish any further lien on the vessels because Allsouth was not a person authorized.

*AFFIRMED.*