## SEGRIST v. CRABTREE.

ERROR TO THE SUPREME COURT OF THE TERRITORY OF NEW MEXICO.

No. 115. Argued December 7, 10, 1888.— Decided May 13, 1889.

The instructions of the court below fairly left it to the jury to determine whether the sale of cattle, which is the subject of this controversy, was an absolute sale or a conditional sale.

TROVER. Plea, the general issue. Verdict for plaintiff and judgment on the verdict.

Defendants sued out this writ of error.

The case is stated in the opinion.

*Mr. O. D. Barrett,* (with whom was *Mr. W. I. Thornton* on the brief,) for plaintiffs in error.

*Mr. S. F. Phillips,* (with whom were *Mr. W. H. Lamar* and *Mr. J. G. Zachry* on the brief,) for defendant in error.

MR. JUSTICE HARLAN delivered the opinion of the court.

This is an action of trover. It was brought in the District Court of the First Judicial District of New Mexico, to recover damages for the conversion by the plaintiffs in error to their own use of certain cattle and horses of which the defendant in error, who was the plaintiff below, claimed to be the owner. The alleged unlawful conversion occurred in that Territory. The defendant Segrist, separately, and the defendants Stapp, Stoops and Holstine, jointly, pleaded not guilty. The record does not show service of process upon Bell, nor any appearance by him. There was a trial before a jury, resulting in a

verdict for $6033.04 in favor of the plaintiff against the defendants, followed — a motion for a new trial having been made and overruled — by a judgment for the above amount against Segrist, Stapp and Stoops. Upon appeal to the Supreme Court of the Territory the judgment was affirmed.

The bill of exceptions taken at the trial contains, though in very confused form, the entire evidence in the case. It is so stated as to render it difficult to understand the precise facts: but upon a careful scrutiny of all the testimony, we think that the general nature of the case is fairly indicated in the following extract from the opinion of the Supreme Court of the Territory, made part of the transcript:

"In 1880 the plaintiff bought of one Babb the remnant, as it is termed in the record, of the latter's herd of cattle, then to be found on certain ranges in Texas. The plaintiff came after said cattle and secured them.

"At the time of making this agreement plaintiff gave Babb notes for the amount agreed upon as the purchase money, and received from Babb a bill of sale for the cattle. Thereafter plaintiff secured and took possession of the cattle, but how many head there were does not appear from the evidence in the record before us.

"The only serious contention in the evidence is, as to whether this transaction was an absolute or merely a conditional sale, the plaintiff insisting and giving evidence tending to show that the sale was absolute, accompanied by a bill of sale absolute on its face, and by delivery of possession of the cattle as fast as they could be secured by him, and that his notes were given in full satisfaction. These notes consist of two promissory notes, each for the sum of eight hundred dollars, one payable in September, 1881, and the other in September, 1882. The defendant, however, insists and introduced evidence tending to show that the sale was conditional upon the payment of the notes at maturity, it being agreed between the plaintiff and Babb that the title to the cattle should remain in the latter until the notes were paid, and that if not paid when due he might assert his title and resume possession of the cattle. After the cattle were secured by the plaintiff he drove them

from the range in Texas, upon which they had been found by him, into Lincoln County, New Mexico.

"The notes were not paid at maturity, and thereafter, in January or February, 1882, Babb undertook to sell the cattle to the defendants. He sent his son, armed with a power of attorney, to take possession of the cattle. This son, accompanied by the defendants or some of them, went on the range in New Mexico, where the cattle were being herded in connection with other cattle belonging to the plaintiff, in charge of an employé of the plaintiff, and took possession of them and sold them to the defendants. It does not appear that this employé of the plaintiff had any authority to give up the possession of the cattle."

The Supreme Court of the Territory deemed it proper to consider only such questions as were brought to the attention of the trial court. This general rule, it said, was strengthened by this statutory provision, in force in that territory, that: "No exception shall be taken in an appeal to any proceeding in the District Court except such as shall have been expressly decided in that court." Prince's Laws, 68–9, § 5.

One of the principal questions arising upon the evidence was whether the two notes, payable respectively in September, 1881, and September, 1882, were received in actual payment, (in which event the remedy is upon the notes,) or only as evidence of the amount to be paid by Crabtree. In *Sheehy* v. *Mandeville*, 6 Cranch, 253, 264, Chief Justice Marshall said: "That a note, without a special contract, would not, of itself, discharge the original cause of action, is not denied. But it is insisted that if, by express agreement, the note is received as payment, it satisfies the original contract, and the party receiving it must take his remedy on it. This principle appears to be well settled. . . . Since, then, the plaintiff has not taken issue on the averment that the note was given and received in discharge of the account, but has demurred to the plea, that fact is admitted: and, being admitted, it bars the action for the goods." In *Peter* v. *Beverley*, 10 Pet. 532, 568, it was said that the acceptance of a negotiable note for an antecedent debt will not extinguish such debt, unless the

19

evidence is at least so clear and satisfactory as to leave no reasonable doubt that such was the intention of the parties. In *Layman* v. *Bank of the United States*, 12 How. 225, 243, it was held that the mere acceptance of the note by the creditor does not necessarily operate as satisfaction of the original debt, and whether or not there was an agreement at the time to receive it in satisfaction, or whether the circumstances attending the transaction warranted such an inference, were properly questions for the jury. In *The Kimball*, 3 Wall. 37, 45, the court said that "by the general commercial law, as well of England as of the United States, a promissory note does not discharge the debt for which it is given unless such be the express agreement of the parties; it only operates to extend until its maturity the period for the payment of the debt. The creditor may return the note when dishonored, and proceed upon the original debt. The acceptance of the note is considered as accompanied with the condition of its payment." These cases show the course of decision in this court. In some of the States the mere acceptance of a note for the amount of a debt raises a presumption of payment.

The contention of the appellants is that the instructions given at the request of the plaintiff, and the charge of the court, were in conflict with or did not conform to, the principles settled in the above cases. There is some slight ground for this contention, arising out of the multiplicity of the instructions given. All the instructions asked, except one on each side, were given, and they were supplemented by a charge covering substantially the same ground. But taking as a whole all the instructions given, and interpreting them in the light of the charge delivered by the court, they are not subject to the criticism of being so inharmonious or misleading as to justify a reversal. The question whether the notes were given and accepted in payment for the cattle was fairly left to the jury. And although they were not told, in words, that an express or special agreement was necessary before the notes could be deemed to have been received in satisfaction of the original debt, they were substantially so instructed. At the instance of the defendants, and in language of which, perhaps,

the plaintiff might complain, they were instructed that " a promissory note is never considered as payment, unless it is taken *absolutely* as payment; if there be any agreement that a note is not to be considered payment if unpaid at maturity, then it is no payment; but the payment of the note only will be the payment of the original claim; and in such case the original contract will remain independent of the notes." The court, upon its motion, said to the jury that if they " found from the evidence that Babb sold and delivered the stock on the range and took promissory notes in payment, this would be an absolute, unconditional sale, and Babb could not retake the stock. Babb's remedy in such case would be by suit to collect what might be due him upon said notes." The principal instruction given, at the instance of the plaintiff, left it to the jury to determine whether the notes were actually given and accepted in absolute payment for the cattle. That is one form of saying that they were so given and so accepted, pursuant to an understanding, that is, by special agreement between the parties, that the original debt should, in that mode, be extinguished. The instructions and the charge mean that if the sale was an unconditional one, and if the notes were given and accepted as absolute payment, the original debt was extinguished, and the remedy of the defendant was on the notes. There was in this no error to the prejudice of the defendants; for the facts thus hypothetically stated to the jury imported a special agreement between the parties that the notes were to be taken in payment. .

Among the instructions given to the jury at the instance of the plaintiff was the following:

" If you find from the evidence that the plaintiff or the plaintiff and his brother purchased the cattle from W. M. Babb or W. T. Babb, and that he or they gave their promissory notes in payment therefor, and the same were accepted by the Babbs, although the notes were taken only as conditional payments, yet they would be *prima facie* evidence of payment, and the said Babbs, whilst holding said notes, could not proceed to take possession of the said cattle and horses as their own. Their remedy would be upon the notes or to cancel the trade;

and if you find from the evidence that said Babbs did, under the circumstances just mentioned, take possession of said cattle without authority of the plaintiff and dispose of them to the defendants, you will find for the plaintiff the value of the cattle and horses at the time of taking the same, with interest."

Taken in connection with other instructions, this was intended only to express the idea that, if the notes were taken as conditional payment only, they would be regarded as *prima facie* evidence of payment, so long as the Babbs held them, and until by non-payment they ceased to have any force, if the Babbs elected to so treat them. The court below properly held that they could not rightfully retake the cattle, while they retained the notes.

Nor, in our judgment, was any error committed by the instructions relating to the question of the title to the property, as affected by the contract of sale. In *Harkness* v. *Russell*, 118 U. S. 663, 668, this court, after a full examination of the adjudged cases, recognized the general rule — at least as between the original parties to a conditional sale, and where the subject is not controlled by local statutes — to be as stated by Mr. Benjamin in his treatise on sales of personal property, namely: "Where the buyer is by contract bound to do anything as a condition, either precedent or concurrent, on which the passing of the property depends, the property will not pass until the condition be fulfilled, even though the goods may have been actually delivered into the possession of the buyer." Nothing was said in the instructions or charge in conflict with this doctrine. The jury were told that a bargain and sale of personal property, accompanied by delivery, divests the vendor of any lien for payment, unless such lien is secured by chattel mortgage or by agreement between the parties; that if the bill of sale in evidence was not given to pass the absolute title, but simply to enable plaintiff to use it in gathering the cattle, and that it was agreed that the cattle were to remain the property of Babb until paid for according to the terms of the notes, it must not be considered as transferring the title; and that, in such case, Babb had the right, upon the failure to pay

the notes when due, (if he did not elect to keep the notes,) to retake the cattle and sell them; but if there was no such agreement, and if the notes were given and accepted as absolute payment, without any reservation of a lien, that Babb, in order to enforce payment, would have no right to retake the cattle from the possession of the plaintiff or of his agent. And that there might be no confusion in the mind of the jury as to the right of Babb to resume possession of the cattle, they were instructed to find for the defendants, if they believed from the evidence that Carter, in whose possession they were when retaken, had authority from Crabtree to settle his debts and to sell and dispose of his cattle, and that he delivered them, under authority from Crabtree, in payment of the notes. In all this we do not perceive any error to the prejudice of the substantial rights of the defendants.

There are no other questions presented that we deem it necessary to notice, and the judgment must be

*Affirmed.*