## GENERAL AMERICAN TANK CAR CORPORATION v. GOREE.

(Circuit Court of Appeals, Fourth Circuit. February 5, 1924.)

No. 2114.

1. Bailment ☞22½, New, vol. 20A Key-No. Series—Lessor of tank cars, who received full credit from bank, could not declare forfeiture of option to purchase because check not paid until after rent was due.

Where lessor of tank cars, receiving lessee's check for rental, transferred it by unconditional indorsement to its bank, where it was given credit on its account prior to the date when the rent was due, the mere fact that the check was protested for nonpayment, and was not paid until after the rent was due, did not entitle lessor to forfeit an option to purchase in the lease, under provision for forfeiture for nonpayment of rent when due, since the action of the bank in accepting payment after protest was an act of the bank as the owner of the check, and not as lessor's agent.

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

2. Bailment ⬅═22½, New, vol. 20A Key-No. Series—Time held essence of contract as to payment of rent under lease of tank cars, as affecting forfeiture of option to purchase.

Where lease of tank cars provided that time was of the essence of the contract, and that failure to pay rental promptly would of itself operate as a forfeiture of option granted lessee to purchase the cars, lessee would have suffered forfeiture of option by failure to pay rental promptly on day on which it was due.

3. Bailment ⬅═22½, New, vol. 20A Key-No. Series—Lessor's cancellation of lessee's option to purchase tank cars held anticipatory breach, relieving lessee.

Where agreement between lessor and lessee of tank cars gave lessee the option, on termination of lease, to purchase the cars, lessor's notice to lessee that it would not permit lessee to exercise the option *held* such an anticipatory breach of the contract as to relieve lessee of its obligation to perform the contract and to entitle lessee to recover deposit made to insure performance; the contract being a bilateral contract and the lease and option constituting one transaction and one contract.

4. Contracts ⬅═313(2)—Repudiation before maturity of unilateral contract or independent promise in bilateral contract does not create right of action.

No right of action arises from repudiation before maturity of a unilateral contract, nor for repudiation of an independent promise in a bilateral contract.

5. Bailment ⬅═31(1)—Lessee, suing for deposit on lessor's breach, not required to prove that it was ready, able, and willing to perform.

Lessee, suing lessor for deposit made to insure performance on lessor's anticipatory breach by cancellation of option granted lessee, was not required to prove that it was ready, able, and willing to carry out its part of the contract.

Rose, Circuit Judge, dissenting.

In Error to the District Court of the United States for the Southern District of West Virginia, at Charleston; George W. McClintic, Judge.

Action by B. K. Goree, receiver of the Home Oil Refining Company of Texas, against the General American Tank Car Corporation. Judgment for plaintiff, and defendant brings error. Affirmed.

Harold A. Ritz, of Charleston, W. Va., and Sigmund W. David, of Chicago, Ill. (Brown, Jackson & Knight, of Charleston, W. Va., and Stein, Mayer & David, of Chicago, Ill., on the brief), for plaintiff in error.

J. H. Barwise, Jr., of Fort Worth, Tex., and George E. Price, of Charleston, W. Va. (Buckner Clay, Mathews, Campbell & McClintic and Price, Smith, Spilman & Clay, all of Charleston, W. Va., on the brief), for defendant in error.

Before WOODS WADDILL, and ROSE, Circuit Judges.

WOODS, Circuit Judge. The plaintiff, Goree, receiver of Home Oil Refining Company, recovered a judgment against General American Tank Car Corporation for $121,004.70 in this action for breach of contract. The material facts are not in dispute. On April 4, 1919, the Tank Corporation and Home Oil Refining Company made an agreement in writing for four-year lease of 400 tank cars by the Tank Corporation to the Oil Company at a rental of $50 a month

for each car, payable on the 1st day of each month in advance. The contract provided that "time of payment of rental is of the essence of this contract." The Oil Company, as lessee, deposited $120,000 with the Tank Corporation as security for its faithful performance of the provisions of the lease. The material stipulations as to this deposit was:

"Should the said lessee make default in the performance of any of the terms or provisions of this lease, the lessor may, but shall not be obliged to, apply the said sum of one hundred twenty thousand dollars ($120,000), or any part thereof, as is necessary for such purpose, to the payment of any sum or sums due from the lessee to the lessor hereunder. Should this agreement be terminated on account of the default of the said lessee, the said sum of one hundred twenty thousand dollars ($120,000), or such part thereof as then remains in the hands of the lessor unapplied, shall be retained by the lessor as liquidated damages (and not as a penalty)."

On the same day the Tank Corporation made and delivered to the Oil Company a written option to purchase all of the leased cars at the termination of the lease at a price of $750 a car, on the two conditions that the Oil Company on the termination of the lease should not be in default of payment of rentals or any other sums due to the Tank Corporation, and that it should exercise the option not less than 60 days prior to the expiration of the lease. The option recites that one of the considerations of the lease was the agreement of defendant to give the option. On May 27, 1919, another lease and option were executed, the only change material here being that the rentals should be due on the 20th instead of the 1st of each month. Differences having arisen under these contracts, the parties undertook to settle them by the written agreement of November 1, 1919, in which they reaffirmed the former contracts with certain changes as to the number and delivery of cars and payment of interest on the deposit of $120,000. This last agreement provided that the oil company's offer to purchase the cars—

"shall be subject to the following express condition in addition to any other remedies provided in said lease contracts and options, namely: That if the second party shall fail to pay rentals accruing to said lease contracts and each thereof promptly when due and in the manner therein provided, then and in such event, the options of purchase granted to the second party upon the said four hundred (400) cars and said one hundred twenty-five (125) cars shall, without any further act whatsoever on the part of the first party, become and be null and void and of no further force and effect."

At the trial the plaintiff contended that the defendant had breached the contract by giving formal notice that it would refuse to allow the plaintiff to exercise the option to purchase the cars at $750 each at the termination of the lease. The defendant's position was that the Oil Company and the receivers had failed to pay the rentals promptly, and so had lost the option to purchase, and forfeited the deposit of $120,000. The defendant further contended that, even if the option had not been lost by failure to pay the car rent promptly, its notice to plaintiff of its intention not to allow the option to be exercised was not such an anticipatory breach of the contract as justified rescission and action for damages by the plaintiff, and that defendant

was entitled to damages sustained by the refusal of the plaintiff to keep the cars and pay the monthly rental.

[1] We think the District Judge was right in instructing the jury:

"That there was no default by the Home Oil Refining Company or its receivers in the payment of the tank rentals due January 20, 1920, under the lease contracts of April 4 and May 27, 1919, as modified by the agreement of November 1, 1919, justifying a cancellation by the defendant of the options to purchase granted by the defendant to the Home Oil Refining Company in connection with the said lease contracts, and the cancellation of the options to purchase by the defendant was wrongful."

These are the facts as to the alleged default in prompt payment of the rent due January 20, 1920. On January 16, 1920, the Oil Company sent to the defendant a check for $16,700.58 on National Bank of Commerce, Fort Worth, Tex. The check reached the defendant on January 19. On the next day the defendant indorsed the check to Indiana Harbor National Bank, Indiana Harbor, Ind. That bank received the check for deposit, and immediately credited it to the defendant on its general account along with similar items amounting in all to $81,628.21, and sent the check in regular channels for collection. On January 27 it received by telegram from its correspondent notice of protest for nonpayment. On the next day the bank received another telegram from its correspondent, canceling the first, because the check had been recalled for payment by the drawee bank. The plaintiff had arranged with the Fort Worth bank for the payment of the check on presentation, and its protest on day of presentation was due to a mistake. On January 27 the check was recalled, with promise of payment, and was paid on January 29.

The Indiana Harbor bank made no change in its credit of the check to the defendant, made no demand of defendant, and gave no notice to defendant of protest, and it appears to have considered the matter closed as if the check had been paid on presentation. Notice of protest, however, was sent from Fort Worth on the day of presentation and protest, and reached the defendant on January 29, the very day the check was actually paid. On February 3, 1920, after receiving notice of protest, defendant wrote plaintiff:

"On account of your failure and refusal to pay the January rental, * * * the options and privileges of purchasing these cars * * * became and the same is now hereby canceled, terminated, and at an end."

[2] Time was expressly made of the essence of the contract, and this was emphasized by the provision in the last agreement that failure to pay the rental promptly would of itself operate as a forfeiture of the option to purchase the cars. Hence, if the check did not produce prompt payment of the rental due January 20, 1920, the option was lost, and the plaintiff had no cause of action. The check was taken as conditional payment. Segrist v. Crabtree, 131 U. S. 287, 9 Sup. Ct. 687, 33 L. Ed. 125. If defendant had retained it and presented it in due course, and payment had been refused on presentation, payment of the check on a later day would have been payment of the rent on that day, and not on the day the rent was due. Phillips, etc., Co. v. Seymour et al., 91 U. S. 646, 650, 23 L. Ed. 341;

Jones v. United States, 96 U. S. 24, 24 L. Ed. 644; Williston on Contracts, § 846.

But the defendant transferred the check by unconditional indorsement to the Indiana Harbor National Bank and received payment in full by credit on its account. This transaction made the bank the absolute owner of the check, and the debtor of the defendant for the amount of it. The subsequent action of the bank in accepting payment of the check after protest was an act of the owner in regard to its own property and not as agent of the defendant. Burton v. United States, 196 U. S. 283, 25 Sup. Ct. 243, 49 L. Ed. 482, and authorities cited in 19 Rose's Notes, 302.

Thus by the negotiation of the check the defendant received the amount of it in payment of the rental when it was due, and the debt of the plaintiff to the defendant for rent was never revived because the defendant never reacquired ownership of the check. Looney v. District of Columbia, 113 U. S. 258, 5 Sup. Ct. 463, 28 L. Ed. 974; Donnelly v. District of Columbia, 119 U. S. 339, 7 Sup. Ct. 276, 30 L. Ed. 465; 3 Williston on Contracts, § 1923. The defendant, having received its money on the day the rent was due, had no ground to complain because the bank from whom it had received the money chose to present the check a second time for payment, or even to extend the time of payment.

The correspondence shows that the payment of rentals for March, April, and July on the 22d, instead of the 20th, were accepted as due payments of the rental. Nowhere in the correspondence is forfeiture of the option claimed on account of delayed payments for these months. Insurance Co. v. Norton, 96 U. S. 234, 242, 24 L. Ed. 689; Insurance Co. v. Eggleston, 96 U. S. 572, 577, 24 L. Ed. 841. It follows that defendant's claim of forfeiture of plaintiff's option to purchase the cars by reason of failure to pay the rent when due is without foundation.

[3, 4] Was there such an anticipatory breach of the option contract as to relieve the plaintiff of its agreement to keep the cars until the end of the contract period and pay rent for them? No right of action arises from the repudiation before maturity of a unilateral contract, nor for repudiation of an independent promise in a bilateral contract. An action cannot be sustained on a promissory note before maturity on the ground that the maker had declared his intention not to pay it. A tenant's repudiation of his lease does not give his landlord an immediate right of action for future rent.

This was a bilateral contract, not a unilateral contract for an option to purchase. The agreements for the lease of the cars and for the option to purchase at the expiration of the lease, though expressed in separate papers, were made at the same time; they were dependent on each other, were made in consideration of each other, and constituted one transaction and one contract. 6 R. C. L. 860; 2 Williston on Contracts, § 827. We are not concerned with the difference of judicial opinion as to the right of action for an anticipatory breach of a contract. The rule applicable here is settled by the Supreme Court:

"The parties to a contract which is wholly executory have a right to the maintenance of the contractual relations up to the time for performance, as well as to a performance of the contract when due. If it appear that the party who makes an absolute refusal intends thereby to put an end to the contract so far as performance is concerned, and that the other party must accept this position, why should there not be speedy action and settlement in regard to the rights of the parties? Why should a locus pœnitentiæ be awarded to the party whose wrongful action has placed the other at such disadvantage? What reasonable distinction per se is there between liability for a refusal to perform future acts to be done under a contract in course of performance and liability for a refusal to perform the whole contract made before the time for commencement of performance?" Roehm v. Horst, 178 U. S. 1, 19, 20 Sup. Ct. 780, 787 (44 L. Ed. 953): Central Trust Co. of Illinois v. Chicago Auditorium Association, 240 U. S. 581, 589, 591, 36 Sup. Ct. 412, 60 L. Ed. 811, L. R. A. 1917B, 580.

In the latter case the court says the difference between real and personal property distinguishes the relation of landlord and tenant from the relation arising from contracts relating to personal property. 3 Williston on Contracts, § 1314. The defendant, without reason, gave express notice in writing that the options were canceled and at an end on February 3, 1920, and repeated the notice on August 20, 1920. On December 22 and December 29, 1920, it explicitly insisted on the forfeiture, refusing the receivers' request that it recede from its position. This was a clear and unequivocal anticipatory breach. The correspondence made an issue of fact as to whether the receivers had exercised within a reasonable time the right to terminate the lease on the ground that defendant had breached the contract. That question was properly submitted to the jury.

[5] The last error assigned is the refusal to give the instruction that, even if the defendant first breached the contract by canceling the option, plaintiff could not recover, in the absence of proof that it was ready, able, and willing to carry out its part of the contract to lease the cars. This position is not tenable, because the action in its essence is not for recovery of profits or advantages of any kind which would have been derived by the plaintiff from the performance of the contract, but for the recovery of the deposit of $120,000 to secure plaintiff's performance. The defendant in reality claims a forfeiture of this deposit for breach of the contract by plaintiff. Since the proof shows vital breach of the contract by defendant, it cannot hold as a forfeiture the deposit made to secure plaintiff's performance. The defendant being in default cannot claim the forfeiture. United States v. Behan, 110 U. S. 338, 345, 4 Sup. Ct. 81, 28 L. Ed. 168; 13 C. J. 608; 2 Williston on Contracts, § 790.

The other questions made are subsidiary, and are disposed of by the conclusions announced.

Affirmed.

ROSE, Circuit Judge (dissenting). I think the opinion of the majority of the court unduly extends the right of immediate action for an anticipatory breach, essential as that right often is. In mercantile contracts of the general nature of that before the court in Roehm v. Horst, 178 U. S. 1, 20 Sup. Ct. 780, 44 L. Ed. 953, the reasons for its recognition are of compelling force, as they are when, as in

Central Trust Co. v. Chicago Auditorium, 240 U. S. 581, 36 Sup. Ct. 412, 60 L. Ed. 811, L. R. A. 1917B, 580, the injured party is not likely ever to get redress, unless he is free to proceed at once. It is even true that the rule now is that such action will lie against one who repudiates his obligations under an executory contract. There are exceptions to it, and as in litigations so begun it is usually difficult or impossible to do exact justice, there always will be. The amount of damages resulting from such a breach can seldom be calculated with precision, and even an approximation to it is frequently difficult. One of the well-recognized classes of cases which are excepted from the general rule is when the breach relied on is of an undertaking which from a practical standpoint is so far independent of the agreements of the other party that no substantial hardship will be occasioned to the latter if he be precluded from suing until the time for performance by the former has come, for in such cases the right to bring an action immediately upon the breach is not necessary to the reasonable protection of the one who has been wronged.

I cannot recall a well-considered case prior to the instant one, which sanctions its exercise under circumstances which to my mind, at least, have any close analogy to those with which we are now concerned. The insistence of the Tank Car Company that the Oil Company had forfeited its option was little more than a gesture, so far as any immediate practical effect was concerned. The lease had some years to run. During all that time there was no question that the lessee, if it paid the rent, had the right to the possession of the cars. At the expiration of the term, it could exercise its option by tendering the purchase price and hold on to them. If the option had not been forfeited, the lessor could have done nothing other than accept the money and thereby surrender all title to the cars. It is hardly a sufficient answer to say that the lessee was not bound to chance the result of litigation. As the parties differed as to their rights under the contract between them, sooner or later the courts had to be called in. The longer the appeal to them could be postponed, the better it would be, provided the delay itself did not work harm.

The parties, after having some experience with each other, modified their agreement, so as to provide that the option should be forfeited if each installment of rent was not paid when due. The conclusion of the majority makes the exercise of such right both difficult and dangerous. If, when a forfeiture occurs, the lessor remains silent, the right to avail of it will be held waived. Moreover, if it does not declare a forfeiture for an early breach, the lessee may argue that the course of dealings between the parties has precluded it from thereafter insisting on promptness, and the majority holds that, if the lessor declares a forfeiture under a mistaken view of the facts, or of its legal rights with reference to them, it breaks the contract and becomes liable to immediate suit therefor.