## HURON COLLEGE v. UNION COUNTY TRUST CO.

### No. 10086.

Circuit Court of Appeals, Eighth Circuit.

May 7, 1935.

610

Irwin A. Churchill, of Huron, S. D. (Churchill & Benson, of Huron, S. D., on the brief), for appellant.

M. T. Woods, of Sioux Falls, S. D. (John H. Voorhees, Theodore M. Bailey, Roswell Bottum, and Howell L. Fuller, all of Sioux Falls, S. D., on the brief), for appellee.

Before SANBORN, WOODROUGH, and VAN VALKENBURGH, Circuit Judges.

VAN VALKENBURGH, Circuit Judge.

Huron College is a coeducational liberal arts college under the patronage and sponsorship of the Presbyterian Church U. S. A. It is located at Huron in the state of South Dakota. Its chief sources of revenue and support in its educational work are student fees, gifts, and income from endowments. Among its patrons who contributed most largely to its support were Ralph Voorhees and Elizabeth R. Voorhees, his wife, of Clinton, N. J. They were deeply interested in the church and made many substantial gifts to various church missions and Christian colleges, among them, to appellant. The first building on its campus was the Elizabeth Voorhees Dormitory for women; the second was the Ralph Voorhees Hall. The money to erect these buildings was furnished and given by Mr. and Mrs. Voorhees. Altogether, during a period of approximately nineteen years, Huron College received from these benefactors gifts aggregating $254,000, summarized as follows: Operating fund $64,500; endowment fund, $55,000; buildings $132,000; campaign, $2,500. May 1, 1906, Ralph Voorhees of Clinton, Hunterdon county, N. J., entered into the following agreement with the president and trustees of Huron College:

"That said Ralph Voorhees, desiring to make a donation of One Hundred Thousand Dollars, to the party of the second part, hereby pays to it, and the party of the second part receives that sum as a gift, to be devoted to the general use and purposes of the party of the second part, subject to the condition and agreement on the part of the party of the second part hereinafter expressed.

"And, in consideration thereof the party of the second part hereby agrees to pay to Ralph Voorhees, so long as he shall live, the annual sum of Five Thousand Dollars, New York Exchange, in semi-annual payments, at his home address as follows:

"Twenty-five Hundred dollars on the first day of December, 1906, next, and Twenty-five Hundred dollars at the expiration of each six months thereafter, and to Elizabeth R. Voorhees, if she survive Ralph Voorhees, a like sum in like manner, so long as she shall live.

"It is also mutually understood and agreed that, in case of default in such semi-annual payments, the said Ralph Voorhees, or, in the event of his death, and her survival, the said Elizabeth R. Voorhees, shall have the right hereby reserved and granted forthwith, to demand and collect and the party of the second part will forthwith repay said first mentioned sum to him or her for his or her own use, benefit and behoof."

This gift was paid to and received by the college. Ralph Voorhees died April 1, 1907. For this reason only the first semi-annual payment was made to him. As stated by counsel for appellant, all further payments were made to Elizabeth R. Voorhees and all later gifts came from her. May 31, 1924, the treasurer of the college procured from the National Bank of Huron a draft drawn on the Hanover National Bank of New York City for the sum of $2,500, and transmitted it by mail in a letter addressed to Elizabeth R. Voorhees at Clinton, N. J. This was done to meet the

semiannual payment due June 1, 1924. No reply to this letter was received by the college, and the draft inclosed was never cashed nor afterwards found. Mrs. Voorhees died September 21, 1924. October 22, 1924, Foster M. Voorhees, Ex-Governor of New Jersey, and executor under the will of Elizabeth R. Voorhees, in announcing the death of the testatrix in a letter to the treasurer of the college, called attention to the payment due in the spring of 1924, together with the conceived amount of annuity earned to the date of Mrs. Voorhees' death, aggregating $4,458.33, and asked confirmation of this statement in order that the correct amount might be properly listed in the necessary appraisal of the estate for inheritance and federal taxes. The treasurer's reply of October 24, 1924, made no reference to this request. Letters from Foster M. Voorhees to the treasurer of Huron College of October 29, 1924, and November 3, 1924,—the latter urgently requesting information respecting the amounts stated to be due from the college —were unanswered. June 17, 1925, the college, by executing an indemnity agreement alleging that the $2,500 draft had been lost or destroyed, procured a refund of the amount from the National Bank of Huron. May 7, 1926, Foster M. Voorhees wrote Treasurer Pasek urging early payment of the amount claimed to be due the estate. It appears from the record that the only communication received from the college by representatives of the estate was the letter of the treasurer of October 24, 1924, which dealt merely upon Mrs. Voorhees' benefactions to Huron College, and requested to be informed whether the college was remembered in Mrs. Voorhees' will. This suit was filed August 20, 1929, and judgment was demanded for $4,458.33, comprising the amount of the payment due June 1, 1924, and the portion of the annuity conceived to have been earned between that date and the death of Mrs. Voorhees. The deposition of the college treasurer was taken in March, 1930, and representatives of the estate of Mrs. Voorhees then first learned that the college had sent a draft addressed to Mrs. Voorhees for the annuity due June 1, 1924. An exhaustive search for this draft was instituted, but it was not found. Foster M. Voorhees died in 1927, and the appellant trust company succeeded him as executor under provision of the will of Elizabeth R. Voorhees. The draft in question had not been found nor presented for payment at the time judg-

ment was entered in the trial court. The case was tried to the court sitting as a jury. The finding was for the plaintiff for the amount of the semiannual payment due June 1, 1924. From this judgment appellant appeals. Appellee has filed no cross-appeal.

Appellee at the outset challenges appellant's right to review on the following stated ground: "Although defendant filed requested findings and declarations of law at the close of the case, no exception was then taken or reserved. The first action of the defendant in attempting to take exception was the filing of exceptions upon May 4, 1934, which the court then allowed, almost a month after the entry of judgment upon April 7, 1934, and more than a month after the court had announced its decision upon April 3, 1934."

Although, strictly speaking, this action by appellant runs counter to the rule that exceptions must be taken "during the course of the trial" and before the entry of judgment, Harvey Company v. Malley, 288 U. S. 415, 53 S. Ct. 426, 77 L. Ed. 866; Fleischmann Construction Co. v. United States ex rel., 270 U. S. 349, 46 S. Ct. 284, 70 L. Ed. 624; General Motors Co. v. Swan Carburetor Co. (C. C. A. 6) 44 F.(2d) 24; Continental Nat. Bank v. National City Bank (C. C. A. 9) 69 F.(2d) 312; United States v. Douglas, Buchanan & Crow (C. C. A. 8) 61 F.(2d) 821; Wear v. Imperial Window Glass Company (C. C. A. 8) 224 F. 60, 63, we think the circumstances presented by this record absolve appellant from the rigid application of this rule. Counsel for the college tendered and requested findings of fact and conclusions of law in its behalf at the close of the trial November 28, 1933. The case was taken under advisement by the court. Its decision was not announced until April 3, 1934, and judgment was entered April 7, 1934. The exceptions to rulings upon the requests of appellant tendered during the progress of the trial were then filed May 4, 1934, during the same term, and were allowed by the trial court. We think they should be entertained. South Utah Mines & Smelters v. Beaver County, 262 U. S. 325, 329, 330, 43 S. Ct. 577, 67 L. Ed. 1004; Commonwealth Casualty Co. v. Aichner (C. C. A. 8) 18 F.(2d) 879; McCandless v. Haskins et al. (C. C. A. 8) 28 F.(2d) 693.

The points urged by appellant are these:

(1) The draft for $2,500 was delivered to and received by Mrs. Voorhees, and, un-

der the circumstances of the case, constituted payment.

(2) At least it constituted conditional payment, and became final payment on the failure of Mrs. Voorhees to cash or return it.

(3) In any event, appellee cannot recover while the draft, a negotiable instrument, remains outstanding and unaccounted for.

1. The great weight of authority is to the effect that, in the absence of agreement or consent to receive it as such, a draft or bill of exchange, although received and accepted by the drawee, does not in itself constitute payment, and is generally designated as conditional payment. 48 C. J. par. 40, pp. 610, 613. Such is the rule in South Dakota, where this controversy arose, and this suit was tried, Eggleston v. Plowman, 49 S. D. 609, 207 N. W. 981, 44 A. L. R. 1231; Farmers' Oil & Gas Co. v. Betts, 50 S. D. 78, 208 N. W. 402, and such is the rule in this circuit, Dow v. Cowan (C. C. A.) 23 F.(2d) 646, 647. In the case last cited it is said:

"It is well settled that the delivery of a check or bill of exchange as a means of paying a debt does not constitute absolute payment, but conditional payment only. We quote the general rule from 22 Am. & Eng. Encyclopedia of Law (2d Ed.) p. 550. 'The execution by a debtor to his creditor of a negotiable bill of exchange or draft for the amount of a precedent indebtedness does not, unless the parties expressly so agree, constitute a payment and discharge of the original indebtedness, but, upon nonpayment of the bill or draft, recovery may be had on the original indebtedness. * * * * * * 'A bill of exchange or promissory note given for a precedent debt does not extinguish the debt or operate as payment of the same, in the absence of a local usage giving it that effect, unless it is expressly agreed that it is received as payment, or there is clear and satisfactory evidence, which leaves no reasonable doubt that such was the intention of the parties.' The same doctrine is held in Segrist v. Crabtree, 131 U. S. 287, 9 S. Ct. 687, 33 L. Ed. 125; and announced by this court speaking through Stone, Circuit Judge, in Royal Indemnity Co. v. Beiseker (C. C. A.) 245 F. 346, where it is said: 'The acceptance of a check or draft in payment of an indebtedness in some other form does not operate as an extinguishment of that indebtedness, unless it appears that such was the intention of the parties.' And, to the same effect, Cleve v. Craven Chemical Co. (C. C. A.) 18 F.(2d) 711 [52 A. L. R. 980]."

See, also, Illustrated Card & Novelty Co. v. Dolan, 208 Mass. 53, 94 N. E. 299.

It is the contention of appellant that there is a special circumstance in the instant case which takes it out of this rule. The instrument of donation provides that the semiannual payments shall be made in "New York Exchange," and it is argued that this implies consent to accept New York drafts as payment. That contention cannot be indulged. This provision is a common one in commercial instruments, inserted for greater safety and convenience in transmissions to substantial distances, and has never, to our knowledge, been interpreted as constituting either express or implied evidence of unconditional payment. The fact that, upon one occasion, Mrs. Voorhees objected to the substitution of Chicago exchange has no further bearing upon the question at issue than to emphasize her insistence upon strict observance of the terms of the contract.

2. It is next urged that, at least, the delay of Mrs. Voorhees in cashing or presenting the draft for payment converted conditional into absolute payment. This is not the rule in the absence of prejudice or injury by reason of the delay. Where no damage has resulted, the drawer of the draft is not released from liability. Dow v. Cowan (C. C. A. 8) 23 F.(2d) 646; Farmers' Oil & Gas Co. v. Betts, 50 S. D. 78, 208 N. W. 402.

Appellant cites Cowing v. Cahill, 56 S. D. 430, 229 N. W. 298, holding that the drawee was bound to present his checks for payment within a reasonable time; but in that case, Farmers' Oil & Gas Co. v. Betts was neither criticized nor disapproved, and the decision in the Cowing Case was evidently based upon the fact that the bank upon which the checks were drawn had failed before presentation. Loss resulted because of the delay. While the general presumption is that a letter properly addressed, stamped, and mailed reaches the addressee, that presumption is not conclusive of the question presented. There is, of course, no direct proof in the record. The search made for the draft on behalf of plaintiff by the representatives of the estates of Mrs. Voorhees, and of Governor Voorhees, was most exhaustive, and fully justified the court's finding that, if received

by Mrs. Voorhees, it was lost. The fact that it has never been presented for payment also warrants the finding that it had not been indorsed and negotiated. The further suggestion is—contrary to the express finding of the court—that it was intentionally destroyed by the drawee. This is based upon the testimony of the college treasurer that Mrs. Voorhees had dealt very generously with this beneficiary, frequently either returning the draft received or sending her own check or draft for the same or even a larger amount. In no case, however, had she accomplished this result by destroying the drafts sent in semiannual payments. The record is replete with evidence that she was a stickler for precise adherence to the terms of her husband's agreement with the college, and that she insisted upon exercising her own judgment, and upon making disposition of her benefactions in her own way,—expressly and not inferentially. It is stated that she was a sufferer from an incurable malady. While her death, in a sense, came suddenly, it appears that for some time prior thereto she had been more or less confined to her bed—not definitely, but periodically. She had a very considerable fortune, and there were many actual and contemplated recipients of her bounty. It is not surprising that, during these last weeks of suffering and preparation, she may have overlooked a prompt disposition of this remittance, if, in fact, she ever consciously received it. Its loss under the circumstances may readily be understood and accounted for.

Codicils to the will of Mrs. Voorhees, produced in evidence, were executed as late as June and July, 1924, two and three months before her death. In that will she left substantial sums to various individuals and institutions, and the residue of her estate to the New Jersey College for Women, out of which to pay the cost of erecting buildings suitable to its needs, including one to be known as the Elizabeth R. Voorhees building, and further to provide for the installation of an organ, for maintenance, and for the establishment of fellowships. Huron College was not mentioned as a devisee, and it is inferable that she may have felt that it had already received its ratable share. We find nothing in the record to support the suggestion that Mrs. Voorhees destroyed the draft, intending thereby to cancel and discharge this semiannual indebtedness of the college.

3. Finally, it is maintained by counsel for appellant that plaintiff cannot recover while the draft, a negotiable instrument, is outstanding and unaccounted for. It would seem that the loss of the draft has been proved by evidence sufficient to warrant the trial court's finding on that point. However, it is contended that, so long as the draft is not produced, it is a potential menace, which might subject the college to double payment. It must be conceded that appellee, ignoring the draft, may proceed upon the original obligation by accounting for the nonproduction of the draft and further establishing circumstances which preclude the possibility of appellant's being forced to make a second payment. Adams v. Baker, 16 R. I. 1, 11 A. 168, 27 Am. St. Rep. 721.

The statute of limitations had not run at the time this suit was instituted, but did bar recovery on the draft at the time judgment was entered. Appellant insists that, to permit recovery, the draft must be presentable or rendered noncollectible at the time the action is commenced. This position is not tenable. Appellee's right of action existed at the time the suit was filed. He was compelled to bring it within the limitation period, and was not called upon to produce the draft until the time of trial. It is within the sound discretion of a court to continue a case, upon substantial proof of loss, until such time as the note or draft is barred by the statute of limitations before entering judgment. It is necessary only that failure to produce the instrument be satisfactorily explained and that a defendant be protected from risk of further liability. Illustrated Card & Novelty Co. v. Dolan, 208 Mass. 53, 94 N. E. 299; Torrey v. Foss, 40 Me. 74, 87; Fales v. Russell, 16 Pick. (Mass.) 315, 317; Matthews v. Matthews, 97 Me. 40, 53 A. 831, 94 Am. St. Rep. 464.

Appellant also suggests that the draft may have found its way into the hands of an indorsee under disability, against whom the statute of limitations would not run. But this presumes that Mrs. Voorhees received the draft, in which case the statute immediately began to run effectively.

We have given careful consideration to the questions presented on this appeal, and have reached the conclusion that the findings of the trial court have ample support in the record, and that the judgment, accordingly, should be affirmed. It is so ordered.