MEMPHIS MEMORIAL PARK
v.
Early M. McCANN.

MEMPHIS MEMORIAL PARK
v.
Lipe HENSLEE, George N. Welch, Jr.
and Joe F. Hale.

MEMPHIS MEMORIAL PARK
v.
Joe F. HALE.
Civ. A. Nos. 1675–1677.

United States District Court
M. D. Tennessee, Nashville Division.
July 28, 1955.

294

Benjamin Goodman, Hubert A. Mc-Bride, Richard H. Allen, and J. S. Allen, Memphis, Tenn., for plaintiff.

Fred Elledge, Jr., U. S. Dist. Atty., Nashville, Tenn., and Fred J. Neuland, Sp. Asst. to Atty. Gen., for defendants.

WILLIAM E. MILLER, District Judge.

In these actions the plaintiff, Memphis Memorial Park, sues to recover deficiencies in income and excess profits taxes, plus statutory interest and penalties, assessed against it for the years 1943 to 1946, inclusive.

The principal issue for decision is whether plaintiff was entitled to exclude or deduct from its gross income, during each of the years involved, amounts set aside and turned over to a trustee during each of those years representing a deficit in a statutory perpetual care fund which it was required under the laws of Tennessee but failed to set aside for years prior to 1942.

The controlling facts are stipulated by the parties or admitted in the pleadings. They are summarized as follows:

Plaintiff was incorporated as a cemetery corporation in 1924 under Section 9, Chapter 142, of the Tennessee Public Acts of 1875. Its principal place of business is at Memphis, Tennessee. Since its incorporation, it has been engaged in the business of developing and maintaining a cemetery and in selling burial lots. In 1927 the Public Acts under which it

was incorporated were amended by Chapter 75 of the Public Acts of 1927, but the Amendatory Act was declared unconstitutional by the Supreme Court of Tennessee on April 4, 1933. Thereafter, the official 1932 Code of Tennessee, amending the said Public Acts of 1927, was adopted to become effective January 1, 1932. That Code included Sections 3919 through 3936 regulating the organization and operation of cemetery corporations in the State of Tennessee, the result being that the charter of plaintiff was accordingly amended effective January 1, 1932.

Provisions of the 1932 Code of Tennessee prescribe that all cemetery corporations chartered under the laws of Tennessee are required to set up and perpetually maintain a fund designated as as a "permanent improvement fund", in reality a perpetual care fund, equal in amount to 25 per cent of the gross sums paid to the cemetery corporation by purchasers of lots in the cemetery, and that the fund is to be invested and the income or interest derived therefrom is to be used by the officers of the corporation for the permanent improvement, upkeep and beautification of the cemetery.

From the date of its incorporation until early in 1929, the plaintiff sold burial lots under contracts which required it to set aside 25 per cent of all sales to be deposited with a trustee, the income from which was to be used for the perpetual maintainance and care of the cemetery. In addition, the contracts required the plaintiff to set aside and turn over to the trustee another 10 per cent of the sale price of lots as an improvement fund for improving and beautifying the cemetery.

The plaintiff complied with the contracts during those years and excluded and deducted the amounts set aside in both funds from its gross income for income tax purposes, but the Commissioner of Internal Revenue allowed only the exclusion of the 25 per cent perpetual care fund turned over to the trustee, ruling that the 10 per cent improvement fund was not properly deductible. The Commissioner's decision was sustained by the Board of Tax Appeals. Memphis Memorial Park v. Commissioner, 28 B. T.A. 1037.

Early in 1929 plaintiff's sales of lots were made under contract which provided for the setting aside of 25 per cent of the sale price of lots for the perpetual maintenance and care of the cemetery as required by the laws of Tennessee. Beginning in 1933, plaintiff sold burial lots under contracts which provided for setting aside a perpetual maintenance fund of 25 per cent for the perpetual care of the cemetery. The fund was to be set aside annually on all fully paid contracts and the income from the fund was to be used for the perpetual care of the cemetery. And beginning on or about March 1, 1942, the plaintiff sold lots under contracts which provided that it had amply and safely provided for the improvement of every grave and lot sold in its cemetery by a plan that assured every lot owner adequate and equal care.

On May 29, 1930, plaintiff entered into a depository agreement with a trustee under which it deposited with the trustee the funds for perpetual care in the amount of $44,062.50 which it had previously set aside in trust. By the terms of the depository agreement, the plaintiff was required thereafter to turn over to the trustee 25 per cent of the total gross sums paid to it by the purchasers of lots. The trustee in turn agreed to receive and to invest the sums so turned over as a permanent improvement fund, to collect the income therefrom, and to remit the income to the plaintiff for its use for the perpetual care of the cemetery as required by the laws of Tennessee.

From 1930 through 1941, no sums whatever were set aside by the plaintiff or turned over to the trustee under the depository agreement. During that period all receipts, whether from lot purchases or from other sources, were used by the plaintiff for its general corporate purposes, and at no time were placed

in trust or otherwise beyond the plaintiff's unrestricted right of use for its general purposes.

During the year 1942 the plaintiff deposited with the trustee the sum of $19,338, representing 25 per cent of the gross sales of cemetery lots for that year.

On January 1, 1942, the plaintiff entered into a new depository agreement with the same trustee which has since remained in full force and effect. Its provisions are substantially those of the depository agreement of May 29, 1930. Under the new agreement, it was represented that plaintiff had turned over to the trustee cash and securities equal in amount to not less than 25 per cent of the total gross sums paid to it to date by lot purchasers. In fact, however, the only amount paid to the trustee was the said sum of $44,062.50, originally turned over to the trustee when the May 29, 1930, agreement was entered into.

On July 24, 1942, the owner of a cemetery lot, Minnie E. Breuck, instituted suit in the Chancery Court for Shelby County, Tennessee, against plaintiff's officers and directors to compel compliance with the statutory and charter provisions requiring the plaintiff to set aside and maintain the 25 per cent perpetual care fund. This litigation was terminated as the result of an agreement dated December 21, 1942, under which plaintiff obligated itself to maintain the 25 per cent statutory fund in the future as required by statute, and to deposit with the trustee secured notes representing the deficit in the fund for previous years of $81,428.81 as of December 31, 1941. The four notes representing the deficit were dated December 31, 1941, and were made payable on or before one, two, three, and four years from date, respectively, and to bear interest at the rate of 4 per cent per annum from date. The notes were secured by a deed of trust on forty-six acres of land. It was agreed that when the notes had been executed and put into the permanent improvement fund, Memphis Memorial Park "has properly set up such fund and its obligations in that regard have been fully discharged".

The plaintiff filed its income and excess profits tax returns for the years 1926 through 1946, with the exception of its return for 1928, upon the accrual basis of accounting.

During the years involved (1943 to 1946, inclusive) plaintiff paid over to the trustee an amount equal to 25 per cent of the gross sales price of lots sold during each of those years, in compliance with the depository agreement of January 1, 1942 and the settlement agreement of December 31, 1942. The 25 per cent so deposited was the sum of $18,880.02 for 1943, $25,104.69 for 1944, $25,129.60 for 1945, and $30,054.46 for 1946.

For each of the same years the plaintiff paid over to the trustee an amount in excess of the 25 per cent fund to make up the deficit for years prior to 1942 and in partial liquidation of the promissory notes executed by it on December 31, 1942, pursuant to the settlement agreement between it and the lot owners. The excess amounts so paid were the sum of $21,719.98 for 1943, $34,119.47 for 1944, $28,553.56 for 1945, and $7,115.98 for 1946.

For each of the years involved the plaintiff filed timely corporation income and excess profits returns, except that no excess profits tax return on Form 1121 was filed for the year 1944. A net loss was disclosed for each of the years 1943, 1944 and 1945, while the 1946 return disclosed a net income of $47,271.84 and a tax due of $17,554.07, which was timely paid. The plaintiff in each of the returns for the years 1943 to 1946, inclusive, excluded from gross income the entire amount set aside and turned over to the trustee of the perpetual care fund during those years, including the statutory 25 per cent and the excess amounts paid to the trustee in partial liquidation of the deficit in such fund for prior years.

After an examination by a Revenue Agent of the plaintiff's records, the Commissioner of Internal Revenue made a

determination disallowing the entire amount set aside and turned over to the trustee of the perpetual care fund in each of the years 1943 to 1946, inclusive. Accordingly, he determined deficiency in tax and penalties for the years involved which were thereafter assessed and paid together with assessed interest thereon.

■ It is conceded by the defendants in their brief that the determination of the Commissioner was erroneous to the extent that he disallowed deductions for payments made by plaintiff to a trustee for each of the years involved representing 25 per cent of its gross sales in those years. This concession is made because of the rulings in Acacia Park Cemetery Ass'n v. Commissioner, 7 Cir., 67 F.2d 700, Commissioner v. Cedar Park Cem. Ass'n, 7 Cir., 183 F.2d 553, and other cases, that a cemetery association is entitled to deduct or exclude from its gross income for income tax purposes the statutory or contract amount which it is required to set aside for perpetual care, if such amount is actually paid and set apart in trust beyond the control of the cemetery association other than to receive the income from the fund.

That payments made by plaintiff to the trustee of the 25 per cent statutory amount of gross sales for each of the years involved were in full compliance with all conditions enunciated by the authorities is altogether clear from the undisputed facts.

As to payments made by plaintiff to a trustee in the taxable years, 1943–1946, in excess of the 25 per cent statutory fund, to liquidate the deficit which had accrued in the fund for prior years, 1930–1941, plaintiff argues that the claim of right doctrine is applicable. Accordingly, it is insisted that it was required to report as income its entire gross sales price for lots during the prior years when the sales were made, since the fund was not maintained and nothing was contributed to it during such years. Under the same doctrine, plaintiff says that in the later years, when it made payment of the deficit to a trustee, it is en-

titled to an adjustment for such years by deducting or excluding from gross income the amounts of the payments so made.

■ The claim of right doctrine is firmly established and its necessary elements were stated by the Supreme Court in North American Oil Consolidated v. Burnet, 286 U.S. 417, 52 S.Ct. 613, 615, 76 L.Ed. 1197:

"If a taxpayer receives earnings under a claim of right and without restriction as to its disposition, he has received income which he is required to return, even though it may still be claimed that he is not entitled to retain the money, and even though he may still be adjudged liable to restore its equivalent."

Defendants, on the other hand, insist that the claim of right doctrine is without application because the proceeds from lot sales during the prior years when the sales were made were, to the extent of 25 per cent of gross sales, "impressed with a trust", and consequently were not received by plaintiff "without restriction as to their use and disposition under a claim of right within the meaning of the authorities". In support of that insistence, it is pointed out that plaintiff was not only specifically required by statute to set up a perpetual care fund representing 25 per cent of its gross sales, but that it had also obligated itself to maintain such a fund under the terms of the contracts of sale with lot purchasers as well as under the terms of the depository agreement of 1930.

■ If the plaintiff received a definite part of the proceeds of its sales during the prior years in the capacity of a trustee "expressly for the benefit of another", rather than in its own individual right and capacity, it would necessarily follow that such receipts were not income to the plaintiff and that they should have been excluded from gross income during the prior years. Healy v. Commissioner of Internal Revenue, 345 U.S. 278, 73 S.Ct. 671, 97 L.Ed. 1007.

Provisions of the Tennessee statute providing for the perpetual care fund are relied upon by the defendants in support of their theory that the plaintiff was a trustee of the perpetual care fund, although it is not made a trustee in express terms, the apparent insistence being that the trust arises by necessary implication.

But the theory that the proceeds of lot sales were impressed with a trust in the plaintiff's hands, when and as received and before the fund was actually set apart and moneys paid into it, appears to be supported neither by the provisions of the Tennessee statute nor by the contracts with lot purchasers.

In construing the statute which makes provision for the fund, the distinction between a trust and a duty to create a trust should be borne in mind. It is recognized that where there is a duty to create a trust, the trust itself does not come into existence until the duty is performed. Restatement of the Law, Trusts, Sec. 26, Comments b and m.

That it was the legislative purpose to impose a duty upon cemetery corporations to create a 25 per-cent perpetual care trust fund, rather than to impose the trust directly, appears to be clearly indicated by pertinent provisions of the statute.

For example, Code, § 3923 provides that "it shall be the duty" of each cemetery corporation "to set up and forever maintain a permanent improvement fund equal in amount to twenty-five per cent" of the total gross sums paid for cemetery lots. The fund is to be loaned or invested by the directors and the income used for "the permanent improvement, upkeep and beautification of its cemetery, and for no other purpose". The penalties prescribed for failure to "set up" the fund emphasize the legislative purpose to impose a duty rather than to establish by force of the statute, without more, a completed trust.

Thus, by Code, § 3929, failure "to set up such twenty-five per cent. permanent improvement fund" subjects the officers and directors of the corporation to criminal penalties and in addition to personal liability at the suit of a lot owner. Also, by Section 3931, failure "to set up and maintain" such fund works a forfeiture of the corporation's charter, and in that event the assets of the corporation may be seized and sold by the state under the orders of the court "to the extent necessary to provide said improvement fund and set the same up."

Similarly, plaintiff's sales contracts with lot purchasers merely imposed a contract duty to create the fund or provided, as did the depository agreement of 1930, for a third-party trustee to receive the fund from the plaintiff. There was no contract provision directly establishing a trust or constituting the plaintiff a trustee of its proceeds from lot sales, when and as received. The inference is plain that the fund must be actually set apart before a trust arises.

The necessary conclusion from the undisputed facts is that the duty resting upon plaintiff to create and maintain the 25 per cent statutory fund or trust was not performed during the prior years in question. When it appeared that no funds had been set aside in trust or paid to a trustee since 1930, the Commissioner of Internal Revenue denied the plaintiff the right to deduct the 25 per cent fund for the years 1932 and 1933. This ruling was made upon the authority of the decision in Acacia Park Cemetery Ass'n v. Commissioner, supra, decided January 11, 1934, which dealt specifically with the right of a cemetery corporation to deduct a perpetual care fund as an accrued liability. In that case the rule was stated as follows [67 F.2d 703]:

"The rulings of the Board are consistent in permitting deductions for accrued liabilities where the books of account are kept according to the accrual method, and that permission has never been denied, in cases of trusts such as the one before us, where the money received has actually been paid into the trust fund. The Board's ruling in such

cases requires the actual payment of the money into the trust fund as a prerequisite to its deduction as an accrued liability, and we think that ruling is proper."

After the Commissioner's ruling with respect to the taxable years 1932 and 1933, the plaintiff reported as income in each year as received the entire sales price of its lots sold in each year. It added no further amounts to its reserve for perpetual care and made no payments into the hands of the trustee; nor did it accrue any liability for perpetual care on its books. As stipulated by the parties, all receipts "were used by plaintiff for its general corporate purposes without any restriction and the same were in no wise placed beyond the power of the plaintiff to use for its general purposes."

Under such circumstances the decisions are uniform in holding that the perpetual care trust fund is incomplete, and that, in the absence of actual payment into the fund, it must be treated as income belonging to the cemetery corporation and reported as such. Acacia Park Cemetery Ass'n v. Commissioner, supra; Commissioner v. Cedar Park Cemetery Ass'n, supra; Portland Cremation Ass'n v. Commissioner, 9 Cir., 31 F. 2d 843.

It may be conceded that before the required fund was actually set apart so as to be beyond plaintiff's control, the plaintiff was subject to an enforceable duty to create the trust fund. But such duty was one which might never have been enforced. As held in Healy v. Commissioner, supra [345 U.S. 278, 73 S.Ct. 675], such a "potential" or "dormant" third party claim or restriction "which depends upon the future application of rules of law to present facts, is not a 'restriction on use' within the meaning" of the claim of right doctrine enunciated in North American Oil Consolidated v. Burnet, supra.

■ The same result would follow if plaintiff be regarded, before the fund is in fact created or set aside, as a constructive trustee to the extent of 25 per cent of its receipts. A constructive trust, as distinguished from an express or pre-existing trust, is one requiring the declaration of a court of equity. The fact that it might be imposed to accomplish justice in a particular case is insufficient to defeat application of the claim of right rule. Healy v. Commissioner, supra; National City Bank of New York v. Helvering, 2 Cir., 98 F.2d 93; Penn v. Robertson, 4 Cir., 115 F.2d 167; St. Regis Paper Co. v. Higgins, 2 Cir., 157 F.2d 884.

■ The Court is, therefore, of the opinion that plaintiff, having received and enjoyed the benefits of the entire proceeds of lot sales for prior years without compliance with its duty to provide for the 25 per cent fund, was required to report such sales as income for such prior years without deduction. Having done so, it is entitled to make the deduction in the later years when it actually paid to a trustee the deficit in the fund which had accrued. North American Oil Consolidated v. Burnet, supra.

The alternative argument of defendants that the payment of the deficit must be treated as having occurred in the year 1942 when the four secured promissory notes were executed and delivered to a trustee is equally untenable. The theory of the argument is that the notes representing the accrued deficit, and executed and deposited with the trustee in 1942, constituted full payment of the deficit and discharged the prior obligation.

■ The authorities cited by defendants for the rule that a note constitutes payment and discharge of the prior obligation for which it is given, recognize that it will not have that effect " 'unless it is expressly agreed that it is received as payment, or there is clear and satisfactory evidence, which leaves no reasonable doubt that such was the intention of the parties.' " Dow v. Cowan, 8 Cir., 23 F.2d 646, 648; Huron College v. Union County Trust Co., 8 Cir., 77 F. 2d 609.

Relative to the intention of the parties, it is insisted that the settlement agreement of December 1942 discloses that the parties did intend that the notes themselves should constitute full payment, particularly the following paragraph:

"When said notes have been executed as aforesaid and set aside and put in said permanent improvement fund, then it is agreed that the party of the second part has properly set up such fund, and its obligations in that regard have been fully discharged; it being further agreed by party of the second part that it will keep said improvement fund intact and not permit a deficiency to exist therein hereafter."

In the light of the entire agreement and the attendant circumstances, the construction of the foregoing language insisted upon by defendants is not justified. The general purpose of the agreement was to terminate pending litigation, and as the deficit was a pre-existing obligation, provision was made for collateral security in the form of a deed of trust on real estate. A reasonable interpretation of the language is that the deposit of the notes and security with the trustee constituted full discharge of the obligation imposed by the agreement for securing payment of the deficit, rather than discharge of the deficit itself in the sense of payment.

It should not lightly be inferred that the contracting parties, in litigation instituted by a single lot owner, although for the benefit of others similarly situated, would intend to release the plaintiff from its prior obligation with respect to the 25 per cent statutory fund by simply making a deposit of secured promissory notes with a trustee.

In any event, the Court is unable to find from the agreement and the entire record that "clear and satisfactory" evidence of intention which is required by the authorities before it could be held that the notes constituted full payment.

Another reason that the theory of payment in 1942 can not prevail is that the deposit of notes with the trustee would not meet the test of actual payment required by the decision in Acacia Park Cemetery Ass'n v. Commissioner, supra, and other decisions of like import. The rationale of those cases is that the fund must be placed beyond the control of the cemetery corporation. That purpose is not accomplished by executing promissory notes, particularly where, as here, they are payable in future installments.

Musselman Hub-Brake Co. v. Commissioner, 6 Cir., 139 F.2d 65, and Anthony P. Miller, Inc., v. Commissioner, 3 Cir., 164 F.2d 268, 4 A.L.R.2d 1219, cited by defendants, deal with provisions of the Internal Revenue Code not here involved. They are not considered to be in point on the precise issues involved in these cases.

A judgment may be submitted accordingly with costs divided equally between the parties.